Argued and submitted August 27, 2009, reversed and remanded for resentencing
April 14, 2010

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## GASTELUM BIDAL CRISTOBAL MEDINA,
*Defendant-Appellant.*

Gilliam County Circuit Court
070031CR; A137956

228 P3d 723

Ernest G. Lannet, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Appellate Division, Office of Public Defense Services.

Michael R. Washington, Senior Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Jerome Lidz, Solicitor General.

Before Schuman, Presiding Judge, and Brewer, Chief Judge, and Riggs, Senior Judge.

SCHUMAN, P. J.

## SCHUMAN, P. J.

Defendant was convicted of several crimes arising out of a single incident of road rage. Five of the convictions involved the use of a firearm. The trial court sentenced defendant to three separate 60-month mandatory minimum firearm sentences under ORS 161.610(4)(a).[1] The first of these sentences was subsumed into defendant's 90-month attempted murder sentence, and the two others ran concurrently with each other and consecutively to the 90-month sentence, yielding a total aggregate sentence of 150 months' incarceration.[2]

■    On appeal, defendant argues that the trial court erred in applying ORS 161.610(4)(a) to multiple firearm convictions. He concedes that he did not raise this issue below, but urges us to consider it as plain error. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *, provided that the appellate court may consider an error of law apparent on the face of the record."); *see also State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990) (holding that an

---

[1] ORS 161.610(4)(a) provides, in part,

"The minimum terms of imprisonment for felonies having as an element the defendant's use or threatened use of a firearm in the commission of the crime shall be as follows:

"(a)  Except as provided in subsection (5) of this section, upon the first conviction for such felony, five years[.]"

[2] In more detail: Defendant was convicted of one count of attempted murder with a firearm, one count of assault in the second degree with a firearm, one count of attempted assault in the second degree with a firearm, two counts of unlawful use of a weapon with a firearm, and three counts of recklessly endangering another person. On the conviction for attempted murder with a firearm, the trial court sentenced defendant to 90 months and a three-year period of post-prison supervision. ORS 137.700. For the conviction of assault in the second degree with a firearm, the court sentenced him to 70 months to run concurrently with the 90-month sentence and a three-year period of post-prison supervision. ORS 137.700. For the first unlawful use of a firearm conviction, the trial court sentenced defendant to 60 months to run concurrently with the 90-month sentence. ORS 161.610. For the second unlawful use of a firearm conviction, the court sentenced him to 60 months to run consecutively to the 90-month sentence. ORS 161.610. Finally, for the attempted assault in the second degree, the court sentenced defendant to 60 months to run concurrently with the second 60-month sentence, ORS 161.610, for a total aggregate incarceration time of 150 months (90 months for the first three convictions plus 60 months for the last two).

error is plain when it is one of law, the error is apparent, and appears on the face of the record).

The state concedes that the trial court plainly erred. *See State v. Hardesty*, 298 Or 616, 619, 695 P2d 569 (1985) (holding that multiple minimum sentences cannot be imposed under ORS 161.610 when a single trial results in convictions of more than one firearm felony). It notes, however, that, while we have the discretion to review plain error if it meets the *Brown* criteria, we should exercise that discretion sparingly and " 'with utmost caution.' " *State v. Fults*, 343 Or 515, 522, 173 P3d 822 (2007) (quoting *Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382, 823 P2d 956 (1991)). Relying on *State v. Quintero-Martinez*, 220 Or App 497, 188 P3d 350, *rev den*, 345 Or 318 (2008), the state argues that we should not exercise our discretion to review the error because, on remand, the trial court "could and likely would" impose the same total punishment.

We agree with, and accept, the state's concession that the trial court plainly erred in imposing multiple firearm minimums. We therefore must determine whether to exercise our discretion to reach that error. That determination involves the assessment of a variety of factors, including

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes*, 312 Or at 382 n 6. Specifically in regard to sentencing errors, we consider whether the defendant encouraged the trial court's imposition of the erroneous sentence, the possibility that the defendant made a strategic choice not to object to the sentence, the role of other sentences in the case, and the interests of the justice system in avoiding unnecessary, repetitive sentencing proceedings. *Fults*, 343 Or at 523.

The state's concession of error bears on several considerations that are relevant to our decision whether to

review the plain error. In *State v. Jones*, 129 Or App 413, 416, 879 P2d 881 (1994), we held that

> "there are no 'competing interests of the parties' when one of the parties concedes an error. The state's concession also satisfies the policies behind the general rule of preservation and raising of error in that the adversary is not denied the opportunity to present its position to the court."

Moreover, the error could be corrected on remand with a minimum expenditure of judicial time and resources, and "[t]hus, it does not undercut or offend notions of judicial efficiency." *Alexander v. Johnson*, 164 Or App 235, 238, 990 P2d 929 (1999).

Both the state and defendant direct our attention to *Quintero-Martinez*, where the trial court committed a similar error and we declined to exercise our discretion to correct it. In that case, the trial court sentenced the defendant to 60 months in prison for first-degree burglary, imposing the firearm minimum under ORS 161.610, and 90 months for first-degree kidnapping with 60 of those months also imposed under ORS 161.610. *Quintero-Martinez*, 220 Or App at 499. The trial court ordered that 30 months of the burglary sentence run consecutively to the 90-month sentence for kidnapping, resulting in a total aggregate sentence of 120 months. At sentencing, the judge told the defendant that "the State and the community [have] some real valid concerns about your ability to be rehabilitated in any time—in any shorter period of time." *Id.* at 501. On appeal, the defendant argued that the trial court committed plain error in applying multiple firearm sentences. We agreed that the court plainly erred, but declined to exercise our discretion to correct that error. We concluded:

> "Given the nature of the asserted error in this case—the imposition of 60-month firearm minimums on both convictions, as to one of which the 60-month minimum was subsumed in the 90-month sentence required for that conviction under ORS 137.700 and therefore had no practical effect—and, given the fact that the trial court indicated its belief that the total aggregate incarceration term of 120 months was necessary for community safety and [the] defendant's successful rehabilitation, we are *certain* that,

on remand, the trial court would, as the state posits, simply remove the firearm minimum from the 90-month sentence."

*Id.* at 502 (emphasis added).

The state argues that this case is indistinguishable from *Quintero-Martinez* and that we should decline to exercise our discretion to correct the error. Defendant disagrees, maintaining that this case is different because it is *not* certain that the trial court would impose the same aggregate sentence on remand.[3] We agree with defendant.

Unlike in *Quintero-Martinez*, in this case there is no "smoking gun" statement from the trial judge from which we can infer that he intended to keep defendant in prison for a certain amount of time or that defendant needed a specific sentence for successful rehabilitation. Here, the trial judge said,

"Easily, easily, you could be looking at * * * a murder charge, easily. And that would have resulted in a mandatory minimum sentence of 300 months * * *. All you need to do is have that bullet be a little bit higher and hit [the victim] somewhere else in his body other than his knee.

"* * * * *

"Given what the incredibly, incredibly foolish and selfish decision that you made, and understanding that that decision very likely was fueled by alcohol, you're lucky that things aren't a lot worse.

"Now, speaking of bad choices, the State offered you a plea * * * for 70 months, which given what happened during the course of the trial, you're going to get anyway. There essentially was no defense to the fact that you shot at this person, and you made a bad choice that night. You made a bad choice by taking it to trial.

"I went out of my way to explain to you what was going on. You've significantly impacted the lives of these two young men and the lives of people who care for them. You've significantly impacted your own life, the life of your girlfriend, and the life of your baby.

---

[3] Defendant also contends that the trial court had to apply the firearm minimum as a component of the 90-month sentence on the primary conviction, attempted murder. That question is not before us, and we decline to address it.

"And I would hope at some point in time that you would be able to start thinking about a decision and the consequences of that decision because the fact is that while your life has been altered in ways that will never be—can never be remedied, when you get out of prison, you will still have a lot of life in front of you, and you're still going to be the father of a kid. And you need to start thinking more carefully about what you do, why you do it, and what the result may be."

While it is clear from the trial court's statement that it disapproved of defendant's behavior, we cannot be *certain* that the trial court was intent on having defendant serve a 150-month aggregate sentence. That uncertainty derives primarily from the court's repeated statements that it erroneously believed that it was required to impose a firearm sentence on each of the convictions for which the jury found the firearm predicate. At one point, the court stated its understanding that "the firearm charges each carry[ ] the mandatory maximum." Shortly thereafter, it repeated, "I'm required to impose the gun minimums." In explaining the aggregate 150-month sentence, the court stated:

"As to Count 5, the Unlawful Use of a Weapon charge, based upon the jury finding that the defendant used or threatened the use of a firearm, I am required to impose a 60-month sentence that will also run concurrently to the 90 months [sentence for the attempted murder conviction] * * *.

"* * * * *

"For Count 8, the Unlawful Use of a Weapon as to [victim], based on the jury's determination that there was in fact the use or threatened use of a firearm against a human being, that there's a *statutorily required sentence* of 60 months, and that sentence is to run consecutively to—meaning in addition to the 90 months on the Attempted Murder for the reason that it involved a completely separate victim.

"As to Count 9, the Attempted Assault in the Second Degree, again based on the jury's determination that there was in fact the use or threatened use of a firearm, *statutorily required 60-month sentence*, and that is also to run consecutively to the conviction for Count 1 * * * but concurrently to the sentence for Count 8."

(Emphasis added.)

It is true that, on remand, the trial court could resentence defendant within the confines of ORS 161.610 and still impose 150 months of incarceration. However, that is not the only outcome. The court could, for example, impose the firearm minimum to run within the 90-month attempted murder sentence and make all of the remaining sentences concurrent to that one. That outcome may be unlikely, but it is not impossible—which is to say, it is not certain that a remand will provide no benefit to defendant. Taking into consideration the state's concession, the gravity of the potential consequences to defendant (60 months of incarceration), and the minimal cost to the judicial system of a simple resentencing proceeding, we conclude that a remand serves the ends of justice.

Reversed and remanded for resentencing.