Argued and submitted December 21, 2011, remanded for resentencing; otherwise affirmed February 6, petition for review denied July 25, 2013 (353 Or 867)

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

JASON LEE AITKEN,
aka Jason Lee Atiken,
*Defendant-Appellant.*

Umatilla County Circuit Court
CFH090001; A143744

296 P3d 587

Marc D. Brown, Deputy Public Defender, argued the cause for appellant. With him on the briefs was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Greg Rios, Assistant Attorney General, argued the cause for respondent. With him on the brief were John R. Kroger, Attorney General, and Mary H. Williams, Solicitor General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

WOLLHEIM, J.

**WOLLHEIM, J.**

Defendant, who was convicted after a jury trial of one count of first-degree assault, two counts of second-degree assault, one count of coercion, and one count of interfering with making a report, argues that the trial court erred in failing to merge one of the second-degree assault guilty verdicts into the first-degree assault guilty verdict; and he also takes issue with the length of the guidelines sentences imposed. We affirm the convictions but remand for resentencing.

Because defendant was convicted, we state the evidence and all reasonable inferences in the light most favorable to the state. *State v. Cervantes*, 319 Or 121, 873 P2d 316 (1994): Early on the morning of January 1, 2009, Torres dropped off her daughter, Taylor, and defendant at the apartment of defendant's sister, Davis, where defendant was staying.

Several hours later, Torres returned to pick up Taylor. As she was coming into the apartment, Torres saw defendant attempt to strike Taylor and she ran to stop him. Defendant turned and stabbed Torres in the neck and stomach. Torres thought that she had been punched, but she later realized that she had been stabbed and was bleeding.

Defendant then threatened Davis, who called her fiancé, Walker, into the living room. When Walker entered the room, he said, "What the F is going on?" Defendant approached Walker and stabbed him twice in the back with a steak knife. Walker did not see the knife and, like Torres, thought that he had been punched. Defendant yelled that everyone should stay out of his business. Torres yelled, "My daughter is my business," and defendant started coming after Torres again. At that time, Walker noticed that he was bleeding and that defendant was approaching Torres; Walker stepped between Torres and defendant and held defendant back. The two men scuffled as they moved toward a different part of the apartment and, in the scuffle, defendant stabbed Walker in each arm.

By this time, Torres and Taylor had left the apartment and were going toward Torres's car. Defendant

followed them outside, jumped into the passenger seat and asked Taylor not to leave. When Taylor tried to call 9-1-1, defendant took Taylor's cell phone away from her.

After the incident in the car, the individuals separated and someone called the Hermiston Police Department, which responded to the scene. An emergency room physician examined Torres, cleaned her stab wounds and closed them with staples. Walker also received medical treatment for his injuries, including surgery.

Defendant was indicted for one count of assault in the first degree, ORS 163.185 (Count 1), for stabbing Walker in the right arm; three counts of assault in the second degree, ORS 163.175, for stabbing Walker in the left arm (Count 2) and for stabbing Walker twice in the back (Counts 3 and 4); two counts of assault in the second degree, ORS 163.175, (Counts 5 and 6), for stabbing Torres in the neck and stomach; one count of coercion, ORS 163.275 (Count 7), and one count of interfering with making a report, ORS 165.572 (Count 8). The following chart shows each count, the relevant statute, the victim, and the body area injured:

| Count | Crime & Statute | Victim | Body area injured |
|-------|-----------------|--------|-------------------|
| 1 | Assault I; ORS 163.185 | Walker | Right Arm |
| 2 | Assault II; ORS 163.175 | Walker | Left Arm |
| 3 | Assault II; ORS 163.175 | Walker | Back |
| 4 | Assault II; ORS 163.175 | Walker | Back |
| 5 | Assault II; ORS 163.175 | Torres | Neck |
| 6 | Assault II; ORS 163.175 | Torres | Stomach |
| 7 | Coercion; ORS 163.275 | Taylor | N/A |
| 8 | Interfering with Making a Report; ORS 165.572 | N/A | N/A |

A jury found defendant guilty on each count.

At sentencing, the trial court merged some of the counts, refused to merge other counts, imposed an upward durational departure, and imposed both consecutive and concurrent sentences. The court merged the guilty verdict on Count 2 with the guilty verdict on Count 1, merged the

guilty verdict on Count 4 with the guilty verdict on Count 3, and merged the guilty verdict on Count 6 with the guilty verdict on Count 5. The court imposed upward consecutive durational departure sentences of 144 months incarceration with 36 months post-prison supervision on Counts 1, 3, and 5. On Count 7, the court imposed a consecutive durational departure sentence of 72 months incarceration and 36 months of post-prison supervision. On Count 8, the court imposed a concurrent one-year jail term. The total imprisonment was for 504 months. The following chart reflects the sentences imposed by the trial court:

| Count | Crime | Departure | Sentence | Consecutive | Merger |
|-------|-------|-----------|----------|-------------|--------|
| 1 | Assault I | Yes | 144 | N/A | N/A |
| 2 | Assault II | N/A | N/A | N/A | Yes, into Ct 1 |
| 3 | Assault II | Yes | 144 | Yes | No |
| 4 | Assault II | N/A | N/A | N/A | Yes, into Ct 3 |
| 5 | Assault II | Yes | 144 | Yes | N/A |
| 6 | Assault II | N/A | N/A | N/A | Yes, into Ct 5 |
| 7 | Coercion | Yes | 72 | Yes | N/A |
| 8 | Inter w/ Make Report | No | 12 | No | N/A |

The trial court explained at sentencing that it would not merge the guilty verdicts on Counts 1 and 3, because it found that, between the two incidents involving injuries to Walker's arms (Counts 1 and 2) and his back (Counts 3 and 4), "there was a substantial opportunity to stop, renounce criminal intent, stop the action, and that's where that—the action that went back over to the stove, and then the—and the back, whichever happened first."

On appeal, defendant contends that the trial court was required to merge the guilty verdict on second-degree assault alleged in Count 3 with the guilty verdict on first-degree assault (Count 1), because the two counts involved the same victim and were part of a single criminal episode. Count 1 alleged that defendant committed assault in the first degree by causing serious physical injury to Walker's

right arm by means of a dangerous or deadly weapon. Count 3 alleged that defendant committed the offense of assault in the second degree by causing physical injury to Walker's back by means of a dangerous or deadly weapon. Defendant contends that the two offenses stem from a single criminal episode—defendant's stabbing of Walker four times—and that the offenses of assault in the first degree and assault in the second degree have the same elements. Resolving defendant's merger argument requires this court to interpret ORS 161.067(3).

ORS 161.067(3) provides:

"When the same conduct or criminal episode violates only one statutory provision and involves only one victim, but nevertheless involves repeated violations of the same statutory provision against the same victim, there are as many separately punishable offenses as there are violations, except that each violation, to be separately punishable under this subsection, must be separated from other such violations by a sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent."

The parties agree that the issue on appeal, for purposes of merger of the guilty verdicts, is whether the state has established that there was a sufficient pause in defendant's criminal conduct to permit the two offenses to be separately punishable. In *State v. Sanders*, 185 Or App 125, 130, 57 P3d 963 (2002), *rev den*, 336 Or 657 (2004), we explained that there is such a "separation" for purposes of ORS 161.067(3) "only if one assault ended before the other began. The mere passage of time, by itself, does not establish that one assault ended before the other began."

In *State v. Watkins*, 236 Or App 339, 236 P3d 770, *rev den*, 349 Or 480 (2010), we considered a factual scenario similar to this case. The defendant, an inmate, attacked a corrections officer and stabbed him several times with a handmade knife. At one point in the attack, the officer kicked the defendant away and activated his alarm to summon help. "Within a span of three or four seconds, defendant watched [the officer] activate the alarm and then resumed his attack." *Id.* at 341. We held that the trial court erred in

failing to merge the seven guilty verdicts for assault in the second degree, because, apart from the time it took for the officer to activate his alarm, "there was no evidence as to any other temporal break in the seriatim stabbings." *Id.* at 348.

Defendant contends that, as in *Watkins*, defendant's conduct involved multiple stabbings as a part of the same criminal episode, and that, as in *Watkins*, the state has not established evidence of a "sufficient pause in the defendant's criminal conduct to afford the defendant an opportunity to renounce the criminal intent." ORS 161.067(3); *Watkins*, 236 Or App at 345. Defendant refers to testimony of Walker on cross-examination that "it all kind of occurred in one transaction."[1]

As noted, however, the trial court found that there had been a "substantial opportunity to stop, renounce criminal intent." In the state's view, this court reviews the trial court's finding for "any evidence." *See Watkins*, 236 Or App at 345 (the appellate court is bound by trial court's findings in merger context "if there is constitutionally sufficient evidence in the record to support those findings"). The state argues that this court must conclude that there is sufficient evidence in the record to support the trial court's finding and that the trial court's finding supports the conclusion that there was a sufficient pause to support separate convictions. The state points to testimony of both Davis and Walker describing two incidents—defendant's stabbing of Walker's back and defendant's stabbing of

---

[1] Walker testified on cross-examination:

"[DEFENSE COUNSEL]: And then there was a bit of a struggle and then there was a second—I think you called it a second altercation where your arms got injured; is that correct?

"[WALKER]: Not really a second. It was kind of all together. I don't know. Just seemed like a second but it just happened really fast.

"[DEFENSE COUNSEL]: It happened really fast. But was there any break in the action or did it pretty much happen together?

"[WALKER]: How do you mean a break?

"[DEFENSE COUNSEL]: Well, you know, if he punched you on the back, did a period of time pass and things calm down before he punched you in the arms, or did it all kind of occur in one transaction?

"[WALKER]: It all kind of occurred in one transaction. Just kind of happened, just went bam."

Walker's arms—as separate altercations initiated after separate motivations.[2] In contrast, defendant argues that this court reviews the trial court's failure to merge Count 3 into Count 1 for errors of law, citing *State v. Green*, 145 Or App 175, 177, 929 P2d 1057 (1996). We agree that the ultimate issue, *i.e.* the application of ORS 167.067(3), is a matter of law. However, we are bound by factual findings underlying the trial court's ruling if there is constitutionally sufficient evidence in the record to support those findings. *Watkins*, 236 Or App at 345.

We agree with the state's contention that, in view of the "any evidence" standard of review of the trial court's factual determinations, Walker's and Davis's direct testimony supports the trial court's finding and we are bound by it. The testimony of Walker and Torres supports the finding that defendant stabbed Walker in the back when he first came into the living room and then stabbed

---

[2] On direct, Walker testified that when he was called into the living room by Davis, he came out and said, "What the F is going on?" He testified that, as he approached defendant, defendant punched him on the back. He did not realize immediately that defendant had stabbed him. Walker explained that defendant stabbed him a second time as he stepped in to prevent Torres from being hurt. Walker testified:

"When I seen [Torres] had blood on her and I felt around my back, because those punches felt kind of weird, and I had blood all over my back. It took me a little bit to realize I was actually stabbed.

"[PROSECUTOR]: And so those are the two injuries to your back? There were two separate stab wounds to your back?

"[WALKER]: Yeah.

"[PROSECUTOR]: And then you had two other cuts to your arms?

"[WALKER]: Yeah.

"[PROSECUTOR]: How did you get those?

"[WALKER]: From the defendant.

"[PROSECUTOR]: And how did he do that?

"[WALKER]: Just stabbed me with a knife, I guess. He just—we got in another altercation. Right then and there we got in an altercation after we did that. I guess we started getting back into it again[.]

"* * * * *

"[PROSECUTOR]: Did you see [defendant] stab or punch at [Torres]?

"[WALKER]: No. I didn't see him do that.

"[PROSECUTOR]: You came out after that happened?

"[WALKER]: No, I was there, but I was kind of worried about myself. I saw myself bleeding and I looked over at him and he was close to [Torres], and that's when I started stepping in."

him a second time in the arms after Walker intervened to prevent defendant from attacking Torres. Accordingly, the trial court did not err in entering separate convictions for the guilty verdicts on Count 1 and Count 3.

The remaining questions on appeal relate to sentencing. Defendant contends that the trial court erred when it imposed sentences on Count 3 (144 months), on Count 5 (144 months), and on Count 7 (72 months) that exceeded the statutory maximums. Defendant concedes that he failed to preserve the issues for appeal, but he asks the court to review the issues as plain error.

The state does not dispute that defendant's sentences exceeded the statutory maximums, but contends that defendant stipulated to his sentences and, therefore, that any sentencing errors are unreviewable. ORS 138.222(2)(d) ("[T]he appellate court may not review * * * [a]ny sentence resulting from a stipulated sentencing agreement[.]"). In the alternative, the state contends that, by acquiescing in the sentencing court's authority to apply enhancements, defendant invited error.

Defendant responds that, although he stipulated to the imposition of durational enhancement factors, he did not stipulate to the length of the sentences. We address first the sentence with respect to Count 3, because it is dispositive. We have reviewed the record of the sentencing hearing and agree with defendant that, although he stipulated to the court's authority to impose enhancements, he did not stipulate to the length of the sentence.[3] In fact, he argued that each of the Assault II guilty verdicts should merge with

---

[3] Defense counsel asserted that the guilty verdicts on Counts 2, 3, and 4 should merge for conviction with the guilty verdict on Count 1. He then noted:

"Now, the court certainly can enhance. We stipulated to enhancement figures. The district attorney has indicated they would request that—they're requesting that each of these four counts be enhanced, and I would assert that *since this is one judgment of conviction, that that judgment of conviction can be enhanced, i.e., doubled.*"

(Emphasis added.) Finally, defense counsel explained his position as to each offense:

"So my argument is that for Counts 2, 3 and 4, is that they merge for conviction within Count 1 under ORS 161.067, and when they merge for conviction, we're talking about one conviction, which is Assault I for [injuries to Walker], and we're talking about 90 months pursuant to Ballot Measure 11.

the single Assault I guilty verdict. Necessarily, defendant was advocating for a lesser sentence than the one imposed by the court. Accordingly, we conclude that the duration of defendant's sentence on Count 3 was not part of a stipulated sentencing agreement and that this court therefore can review defendant's sentence.

Defendant contends that the trial court exceeded the statutory maximum for a Class B felony when it departed from a Ballot Measure 11 sentence and imposed a 144-month prison term for Counts 3 and 5 under the felony sentencing guidelines. As noted above, he concedes that he failed to preserve the sentencing issues for appeal, but asks

---

And if we—if, as the state suggests, we go out of the guidelines to a 9-A, we're talking about 66 to 72.

"Now, the state has also indicated—And I'll try to concentrate on one victim at a time, so as not to be too confusing. State has indicated that they want to enhance and their proposal is that they enhance each of these four counts, 1 to 4, and from 72 to the 144.

"And certainly under these enhancements that we stipulated to, the state can enhance. But my argument would be that we're talking about one conviction, the conviction—the crimes having merged for conviction, so we're talking about enhancing Count 1 from the presumptive sentence, which would be 72, and conceivably doubling it to 144.

"The same argument, then, applies to Counts 5 and 6 for [as to assaults of Torres] *** that occurred on this same criminal episode.

"And I would assert that ORS 161.067, which talks about merging for conviction, applies, and Count 5, the Assault II, and Count 6 merge for conviction. And we're talking about one conviction here for [assaults of Torres] for Assault II.

"And we agree that it's a Ballot Measure 11, 70 months, and if you take it out into the guidelines as a 9-A, 66 to 72 is the presumptive, and state is arguing for enhancements. We stipulated to enhancements. The judge can— Judge, you can enhance.

"[As to Taylor, defendant] was convicted by the jury of Count 6, Coercion. We agree it's a 7-A, presumptive 31-36. The court has authority, at least presumptively, to give [him] 36 months, since we stipulated to enhancement facts, that if the court were to find an enhancement fact for a third victim, that the court could basically double that 36 up to 72."

It is clear that, with respect to Counts 1, 2, 3, and 4, to the extent that defendant stipulated to a doubling of the sentence for enhancement factors, that was based on the assumption that the guilty verdicts on Counts 2, 3, and 4 would merge into a single conviction for Assault I; defendant did not stipulate to a doubling of the sentence as to each count of Assault II. With respect to the remaining assault counts, to the extent that defendant stipulated, he stipulated that the trial court had authority to impose enhancements, but there was no stipulation as to the length of sentence.

the court to exercise its discretion to review the issues as plain error.

To qualify as plain error, the error must (1) be an error of law, (2) apparent, meaning the legal point is obvious, not reasonably in dispute, and (3) appear on the record such that we "need not go outside the record or choose between competing inferences to find it." *State v. Brown*, 310 Or 347, 355, 800 P2d 259 (1990).

Assault in the second degree is a Ballot Measure 11 offense with a mandatory minimum prison term of 70 months. ORS 137.700(2)(G). Under ORS 137.700, a sentencing court is authorized to "impose a greater sentence if otherwise permitted by law, but may not impose a lower sentence than the sentence specified in subsection (2) of this section." However, if the guidelines sentence for a Ballot Measure 11 offense is greater than the mandatory sentence for that offense, a sentencing court may not impose a sentence greater than the statutory maximum provided in ORS 161.605. *State ex rel Huddleston v. Sawyer*, 324 Or 597, 604, 932 P2d 1145 (1997). Thus, if a court decides to impose a sentence on a Ballot Measure 11 offense pursuant to the sentencing guidelines rather than ORS 137.700, it cannot impose a sentence greater than the statutory maximum indeterminate sentence provided in ORS 161.605.

ORS 161.605(2) sets the maximum term of an indeterminate sentence of imprisonment for a Class B felony at 120 months. Assault in the second degree is a Class B felony. ORS 163.175(2). Thus, the maximum indeterminate sentence for assault in the second degree is 120 months.

In this case, defendant was convicted of two counts of assault in the second degree (Counts 3 and 5). The trial court did not impose the mandatory term pursuant to ORS 137.700 for those convictions. Instead, it imposed an upward durational departure sentence of 144 months on each count under the sentencing guidelines. In so doing, the court exceeded the statutory maximum of 120 months for a Class B felony.

Thus, the error in this case meets the test of plain error because it is legal, the legal point is not reasonably

subject to dispute, and the error appears on the face of the record. But even though it meets that test, we must still decide whether to exercise our discretion to correct the error.

That determination involves the assessment of a variety of factors, including

> "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error have been served in the case in another way, *i.e.*, whether the trial court was, in some manner, presented with both sides of the issue and given an opportunity to correct any error."

*Ailes v. Portland Meadows, Inc.*, 312 Or 376, 382 n 6, 823 P2d 956 (1991) (citations omitted). In addition, regarding sentencing errors,

> "we consider whether the defendant encouraged the trial court's imposition of the erroneous sentence, the possibility that the defendant made a strategic choice not to object to the sentence, the role of other sentences in the case, and the interests of the justice system in avoiding unnecessary, repetitive sentencing proceedings."

*State v. Medina*, 234 Or App 684, 687, 228 P3d 723 (2010) (citing *State v. Fults*, 343 Or 515, 523, 173 P3d 822 (2007)). The state makes no argument on the question of plain error or whether we should exercise our discretion to correct the error. However, in the context of its argument on reviewability, the state asserted that we should not review any error in defendant's sentence because defendant invited error by acquiescing to the state's recommended sentences. We have reviewed the sentencing record and once again we reject the state's contention. Although defense counsel agreed that the trial court could sentence defendant to 144 months on defendant's Assault I guilty verdict (Count 1), counsel's agreement was in the context of a contention that all of the Assault II guilty verdicts with respect to Walker should be merged with Count 1. Counsel did not acquiesce in or invite sentencing error with respect to Counts 3 and 5. Because the state has no valid interest in having defendant

serve an unlawful sentence, we exercise our discretion to remedy that error. *See State v. Wierson*, 216 Or App 318, 319, 172 P3d 281 (2007) (exercising our *Ailes* discretion under similar circumstances because the state had no interest in having the defendant serve an unlawful sentence).

Remanded for resentencing; otherwise affirmed.